United States District Court
Southern District of Texas
**ENTERED**
January 27, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HUMBERTO ELIAS CASTRO-VASQUEZ, A #220-507-642, | § § § | |
| Petitioner, | § § | |
| VS. | § § | CIVIL ACTION NO. H-25-5164 |
| WARDEN RAYMOND THOMPSON, *et al.*, | § § § § | |
| Respondents. | § | |

## MEMORANDUM AND ORDER

The petitioner, Humberto Elias Castro-Vasquez, is a noncitizen detainee in the custody of United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") officials at the Joe Corley Processing Center in Conroe, Texas. Through counsel, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his continued detention. Doc. No. 1. An Immigration Judge ("IJ") granted his release on bond under 8 U.S.C. § 1226(a), but the Respondents invoked an automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2), pending their appeal of the order granting bond. Respondents have filed a motion for summary judgment (Doc. No. 15), to which Castro-Vasquez has filed a response in opposition (Doc. No. 18), and the Respondents have filed a Reply (Doc. No. 19). The Court has carefully reviewed the pleadings, record, motion,

response, reply, and the relevant law, and concludes that the habeas petition should be GRANTED for the reasons that follow.

## I.    BACKGROUND

In August 2021 at the age of 15, Castro-Vasquez entered the United States as an unaccompanied alien child ("UAC"). He claims that he fled his home country of Guatemala because he feared for his safety after gangs tried to recruit him. He was apprehended near El Paso, Texas, and was issued a I-200 warrant and a Notice to Appear. *See* Doc. No. 16-1 at 16-18 (under seal). The United States Department of Health and Human Services, Office of Refugee Resettlement ("ORR") released him to the care of his father on September 8, 2021. *Id.* at 20.

On November 21, 2021, Castro-Vasquez timely filed his I-589 Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture with the United States Citizenship and Immigration Service ("USCIS"). *Id.* at 11. Castro-Vasquez maintains that the USCIS has jurisdiction over his asylum application because he was a UAC at that time and is a class member in *J.O.P. v. DHS*, No. 8:19- CV-01944-SAG (D. Md.). Castro-Vasquez claims that the *J.O.P.* settlement provides, among other things, that "USCIS will exercise initial jurisdiction over class members' asylum applications even for individuals in removal proceedings, and that ICE will refrain from executing a final order of removal until USCIS issues a decision on asylum." Doc. No. 1 at 5 (citing Exhibit D, *J.O.P.* Settlement Agreement [Doc. No. 16-1 at 22-38]).

Castro-Vasquez states that in May 2023, USCIS granted him work authorization and a social security card based on his pending asylum application. Doc. No. 1 at 5. He filed a Form 1040 tax form on the income he earned in 2024. Doc. No. 16-1 at 61. On June 11, 2025, Castro-Vasquez was detained by ICE after a traffic stop.[1] At that time, ICE issued a Notice to Appear Form I-862, charging him with violation of Immigration and Naturalization Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). Doc. No. 16-1 at 39-41. ICE transferred him to the Joe Corley Detention Center in Conroe, Texas, on June 30, 2025.

On July 2, 2025, Castro-Vasquez filed for redetermination of his custody along with "his passport, birth certificate, verification of release that confirmed he entered the United States as an unaccompanied minor child, proof that he had a sponsor who would ensure his compliance with court dates after release, proof of employment and a 2024 income tax return, a number of character reference letters including one from a church, and a copy of his filed Asylum application." Doc. No. 1 at 6 (citing Exhibit F, Motion for Custody Redetermination [Doc. No. 16-1 at 44]). On July 16, 2025, an IJ granted his bond request, ordering his release from custody with a $10,000 bond. *Id.* (citing Exhibit G). On July 17, 2025, the Department of Homeland Security ("DHS") moved to stay the release on bond under 8 C.F.R. 1003.19(i)(2), pending appeal. That regulation provides, in part:

> In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge

---

[1] According to the pleadings, the petitioner was charged with driving in the left lane while being overtaken from the rear and driving without a license. Doc. No. 1 at 5. The State of Florida later abandoned the charge of driving in the left lane and has "withheld" the adjudication of the license charge. *Id.* at 7.

authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 C.F.R. 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.

Castro-Vasquez remains in custody.  Respondents argue that despite the IJ's determination that Castro-Vasquez's case falls under 8 U.S.C. § 1226(a) and that he is eligible for release on bond, Castro-Vasquez is being detained under 8 U.S.C. § 1225. *See* Doc. No. 16-1 at 120, 122 (Bond Appeal); Doc. No. 15 (MSJ).

On August 14, 2025, Castro-Vasquez moved to terminate his removal proceedings, arguing that under the *JOP* class settlement, USCIS, not the Executive Office of Immigration Review ("EOIR"), has initial jurisdiction over his asylum claims. Doc. No. 1 at 7.  His motion was denied on September 10, 2025.  *Id.*  Castro-Vasquez states that at the time he filed this petition, he had been detained for over four months.  To date, he has been detained more than six months, and more than 150 days past the date that Respondents invoked the automatic stay after he was granted release on bond.  He claims that there is no indication as to when the BIA will rule on DHS's appeal while he remains in "bureaucratic limbo" in indefinite detention.  *Id.*  He seeks a declaration that his detention violates due process and a writ of habeas corpus granting his immediate release.

Respondents move for summary judgment, arguing that Castro-Vasquez is properly detained under 8 U.S.C. § 1225(b)(2) and that his claims regarding due process and membership in the *J.O.P.* class as a UAC fail. Castro-Vasquez counters that Respondents are holding him unlawfully in violation of due process because the IJ has already

determined that he is not a flight risk or a danger to the community, having granted bond under 8 U.S.C. § 1226(a).

## II.   LEGAL STANDARDS

### A. 28 U.S.C. § 2241

Section 2241(c)(1) of Title 28 of the United States Code "applies to persons held 'in custody under or by color of the authority of the United States.'" *Munaf v. Geren*, 553 U.S. 674, 686 (2006) (citing § 2241(c)(1)). "An individual is held 'in custody' by the United States when the United States official charged with his detention has 'the power to produce' him." *Id.* (quoting *Wales v. Whitney,* 5 S. Ct. 1050, 1054 (1885); *see also* 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained")).

Habeas corpus is available to a person challenging the legality of immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Gudiel Polanco v. Garland*, 839 F. App'x 804, 805 (4th Cir. 2021) (holding that where the alien challenged his detention rather than any removal order, his challenge "must be brought pursuant to a habeas corpus petition" in district court). Courts retain jurisdiction to review an alien's detention "insofar as that detention presents constitutional issues, such as those raised in a habeas petition." *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished op.) (citation omitted).  Where, as here, a habeas petition "'raises only issues of law, or questions regarding the legal implications of undisputed facts,'" a court need not hold a hearing to decide the case and grant habeas relief. *See Gomez Vallecios v. Noem*, No. EP-

25-CV-573-KC, 2025 WL 3853219, at *1 (W.D. Tex. Dec. 9, 2025) (quoting *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989), and concluding that the petition could be granted without a hearing because it presented questions of law and facts were resolved in favor of the respondents); *see also Alves da Silva v. U.S. Immigration and Customs Enforcement*, No. 25-CV-284-LM-TSM, 2025 WL 2778083, at *1 (D.N.H. Sept. 29, 2025) (noting that a "petition 'may be resolved on the merits without [an evidentiary] hearing when, as here, the material facts are not in dispute'" (citation omitted)).

### B. Detention under 8 U.S.C. § 1225(b) and 8 U.S.C. § 1226(a)

The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting section 1226(a)). "[T]he Attorney General 'may release' an alien detained under § 1226(a) 'on bond or conditional parole.'" *Id.* (cleaned up). But "aliens who are covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting Section 1225(b)(2)(A)). Section 1226 'provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal.'" *Rodriguez v. Bostock*, 779 F. Supp.3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)).

III.   **DISCUSSION**

A.   **Detention under Section 1225 or 1226**

Respondents point to the Supreme Court's "longstanding view that the Government may detain deportable aliens during the limited period necessary for their removal proceedings," *Demore*, 538 U.S. at 526, and contend that such detention is "a constitutionally permissible part of that process." *Id.* at 531.  The Government further maintains that Castro-Vasquez is legally detained under 8 U.S.C. § 1225(b) instead of 8 U.S.C. § 1226(a) and is subject to mandatory detention, notwithstanding the IJ's determination to the contrary.  The IJ determined that Castro-Vasquez was eligible for bond under INA § 236(a), (8 U.S.C. § 1226(a)), and granted bond based on a finding that he was not a flight risk nor a danger to the community.  *See* Doc. No. 16-1 at 120 (appealing the IJ's decision "ordering [Castro-Vasquez] released from DHS custody pursuant to INA § 236(a)").

In July 2025, DHS changed its policy regarding detention, taking the new position that all noncitizens who have not previously been admitted or paroled are subject to mandatory detention under Section 1225(b), regardless of where they are apprehended, how long they have been living in this country, whether they have U.S. family ties, or whether they have any serious criminal history.  For the quarter-century preceding this change in policy, noncitizens who were already in the country when apprehended were

detained under Section 1226 and, if not a criminal subject to Section 1226(c), were entitled to a bond hearing under Section 1226(a). [2]

The new policy has generated a torrent of litigation. The majority of cases to have examined whether a noncitizen already present in the United States falls under the mandatory detention scheme of Section 1225, or is entitled to discretionary detention under Section 1226, have determined that such noncitizens fall under Section 1226 and are

---

[2] As one court noted:

> Until this year, the DHS has applied [section] 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

*Cordero Pelico, et al. v. Kaiser, et al.*, No. 25-CV-07286-EMC, 2025 WL 2822876, at \*3 (N.D. Cal. Oct. 3, 2025).

entitled to a bond hearing.[3]   A number of other cases have held that the Respondents'
interpretation of Section 1225(b) is correct.[4]

Although the Fifth Circuit has not ruled on this issue yet, the Seventh Circuit
recently concluded that the Government was "not likely to succeed on the merits of their
argument that those individuals, whom ICE arrested in Chicago without a warrant, are
subject to mandatory detention under § 1225(b)(2)(A)." *Castañon-Nava v. U.S. Dep't of
Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *9 (7th Cir. Dec. 11, 2025).   The

---

[3] *See, e.g., Buenrostro-Mendez v. Bondi, et al.*, Civ. A. No. H-25-3726 (S.D. Tex. Oct. 7, 2025)
(Rosenthal, J.); *Padron Covarrubias v. Vergara, et al.*, Civ. A. No. 5:25-cv-112 (S.D. Tex. Oct. 8,
2025) (Kazen, J.); *Chogllo v. Scott*, No. 2:25-cv-00437-SDN, 2025 WL 2688541, at *1 (D. Me.
2025); *Hasan v. Crawford*, No. 1:25- CV-1408 (LMB/IDD), 2025 WL 2682255 (E.D. Va. Sept.
19, 2025); *Arce v. Trump*, No. 8:25CV520, 2025 WL 2675934 (D. Neb. Sept. 18, 2025); *Vazquez
v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Palma v.
Trump*, No. 4:25CV3176, 2025 WL 2624385 (D. Neb. Sept. 11, 2025); *Carlon v. Kramer*, No.
4:25CV3178, 2025 WL 2624386 (D. Neb. Sept. 11, 2025); *Perez v. Kramer*, No. 4:25CV3179,
2025 WL 2624387 (D. Neb. Sept. 11, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025
WL 2607924 (D. Mass. Sept. 9, 2025); *Martinez v. Secretary of USDHS Noem*, No. 5:25-CV-
01007-JKP, 2025 WL 2598379 (W.D. Tex. Sept. 8, 2025); *Herrera Torralba v. Knight*, No. 2:25-
CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); *Carmona-Lorenzo v. Trump*,
No. 4:25CV3172, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Fernandez v. Lyons*, No.
8:25CV506, 2025 WL 2531539 (D. Neb. Sept. 3, 2025); *Perez v. Berg*, No. 8:25CV494, 2025 WL
2531566 (D. Neb. Sept. 3, 2025); *Leal-Hernandez v. Noem*, No. 1:25-CV-02428- JRR, 2025 WL
2430025 (D. Md. Aug. 24, 2025); *Jacinto v. Trump*, No. 4:25CV3161, 2025 WL 2402271 (D. Neb.
Aug. 19, 2025); *Garcia Jimenez v. Kramer*, No. 4:25CV3162, 2025 WL 2374223 (D. Neb. Aug.
14, 2025); *Anicasio v. Kramer*, No. 4:25CV3158, 2025 WL 2374224 (D. Neb. Aug. 14, 2025);
*Mohammed H. v. Trump*, 786 F. Supp.3d 1149, 2025 WL 1692739, at *5–6 (D. Minn. June 17,
2025); *Günaydin v. Trump*, 784 F. Supp. 3d 1175 (D. Minn. 2025); *Lazaro Maldonado Bautista
et al. v. Ernesto Santacruz Jr et al.*, 5:25-cv-01873-SSS-BFM, Dkt # 14 (C.D. Ca. Jul. 28, 2025);
*Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 1193850, at *16 (W.D. Wash. Apr.
24, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *9 (D. Mass. July 7,
2025)).

[4] *See, e.g., Cabanas v. Bondi*, No. 4:25-CV-04830, 2025 WL 3171331, at *1 (S.D. Tex. Nov. 13,
2025) (Eskridge, J.); *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H (N.D. Tex. Oct. 24, 2025)
(Hendrix, J.); *Sandoval v. Acuna*, No. 6:25-CV-01467, 2025 WL 3048926 (W.D. La. Oct. 31,
2025); *P.B. v. Bergami, et al.*, No. 3:25-CV-02978-O, 2025 WL 3632752, at *5 (N.D. Tex. Dec.
13, 2025).

Seventh Circuit rejected the argument that the Government advances here, that "an 'applicant for admission' is synonymous with a person 'seeking admission' because, as they put it, one cannot apply for something without also seeking it" and that such a construction "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Id.* (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). The Seventh Circuit recognized that "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law." *Id.* (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), for the proposition that "'[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law"; and *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958), noting: "[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.")). The Seventh Circuit further noted: "It also does not escape our notice that Defendants' recent reliance on § 1225(b)(2)(A) to detain noncitizens discovered within the United States upends decades of practice." *Id.* at *9 n.13 ("'Before July 8, 2025, DHS's long-standing interpretation had been that § 1226(a) applied to those who have crossed the border between ports of entry and are shortly thereafter apprehended.'" (citation omitted)).

Thus, the first federal appellate court to address the issue of the applicability of Section 1225(b) versus Section 1226(a) to noncitizens apprehended after they were already

present in the United States, like petitioner in this case, has indicated that Section 1226, rather than Section 1225, applies to those noncitizens. Given that the IJ has already determined that Castro fits under Section 1226(a) and has been granted bond, and the weight of authority on this issue available to date, the Court concludes that Castro-Vasquez is subject to Section 1226(a).

**B. <u>The automatic stay, as applied to petitioner, violates due process</u>.**

Having determined that Castro is detained under Section 1226(a), the Court turns to the issue of whether his due process rights are being violated by Respondents' continued invocation of the automatic stay under 8 C.F.R. § 1003.19(i)(2). Far from being a "throwaway claim" as the Respondents suggest, whether Respondents' action under Section 1003.19(i)(2) is violating petitioner's procedural due process rights by continuing his detention after he has been granted bond is the crux of this case.

At the outset, the Court observes that over fifty courts, including some within the Southern District of Texas, have held that Section 1003.19(i)(2), as applied, violates procedural due process of noncitizens who have been granted bond. *See, e.g.*, *Arcos v. Noem*, No. 4:25-CV-04599, 2025 WL 2856558, at *3 (S.D. Tex. Oct. 8, 2025) (Eskridge, J.) (citing cases); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also M.P.L. v. Paul Arteta, et al.*, No. 25-CV-5307 (VSB), 2025 WL 3288354, at *7 (S.D.N.Y. Nov. 25, 2025) ("At least 50 district court decisions across the United States in the last 6 months alone . . . have found that DHS's application of the

11 / 15

automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2) violates a non-citizen's due process under the Fifth Amendment") (citing cases)).

So too here. The Fifth Amendment of the United States Constitution provides: "No person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V. Every person in the United States, regardless of immigration status, is entitled to due process of law. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *Demore*, 538 U.S. at 523; *see also Zadvydas*, 533 U.S. at 693 ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") (citations omitted).

Courts apply the three-factor test set forth in *Mathews v Eldridge,* 424 U.S. 319 (1976), to determine whether government action violates a person's right to procedural due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334-35.

**1. The private interest at stake favors Castro-Vasquez.**

Regarding the private interest affected, the Supreme Court has observed that freedom from physical detention is "the most elemental of liberty interests." *Hamdi v Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Arcos*, 2025 WL 2856558, at *2. The record

12 / 15

reflects that Castro-Vasquez has significant U.S. family ties, a pending application for asylum, no serious criminal history, and positive employment record as a taxpayer. The IJ already determined that Castro-Vasquez should be released under Section 1226(a) and granted him bond. Respondents do not address this factor. Castro-Vasquez's private interest in his personal liberty is substantial and weighs heavily in his favor.

**2. The risk of erroneous deprivation also favors Castro-Vasquez**.

Notably, the IJ granted bond, which required a finding that Castro-Vasquez does not pose a flight risk or a danger to the community. Therefore, the risk of erroneous deprivation is high because he has already prevailed in his bond hearing. The automatic stay allows Respondents, as the losing party, to decide unilaterally to detain the person who was granted bond. *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187-88 (D. Minn. 2025). In invoking the automatic stay, Respondents have prevented his release now for over 150 days.[5] Castro-Vasquez has been detained over six months, with no indication of any end point, since his asylum claim is pending and there is a dispute regarding whether USCIS or EOIR has jurisdiction over that case. The risk of erroneous deprivation favors Castro-Vasquez.

**3. The Government interest does not outweigh the private interest.**

Regarding the Government's interest, Respondents point to no weighty governmental interest favoring Castro-Vasquez's continued detention, especially in view

---

[5] Respondents invoked the automatic stay on July 16, 2025, more than 150 days ago. Doc. No. 16-1 at 119. To date, Castro has been detained for more than six months, since June 14, 2025. *See* Doc. No. 1 at 6.

of the IJ's previous determination that he is eligible for release on bond. *See Alves da Silva v. U.S. Immigration and Customs Enforcement*, --- F. Supp.3d ----, 2025 WL 2778083, at *5 (D. N.H. Sept. 29, 2025) ("The government makes no attempt to demonstrate why it has an interest in automatically prolonging the detention of noncitizens whom an IJ has specifically determined pose neither risk [of flight nor a danger to the community]."). Thus, the third *Mathews* factor weighs in favor of Castro-Vasquez.

Weighing the factors in *Mathews*, the Court finds that the automatic stay provided by 8 C.F.R. § 1003.19(i)(2), as applied to Castro-Vasquez, violates his due process rights. *See Arcos*, 2025 WL 2856558, at *3 (citing cases); *Sampiao*, 2025 WL 2607924, at *12; *Günaydin*, 784 F. Supp. 3d at 1175 (D. Minn. 2025); *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1158 (D. Minn. 2025). Therefore, he is entitled to habeas relief on his continued detention claim.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. This habeas petition filed by Humberto Elias Castro-Vasquez is **GRANTED**.

2. The Government's motion for summary judgment (Doc. No. 15) is **DENIED**.

3. **Within 24 hours of this Order**, if proffered, Respondents shall accept a $10,000 bond payment made on the petitioner's behalf. Respondents must coordinate with counsel for Castro-Vasquez to effectuate his release. The Respondents must promptly release the petitioner in accordance with the terms of the Immigration Judge's bond order, subject to the same conditions

in that bond order, and in coordination with the petitioner's counsel, **within 72 hours of the bond payment**.

4. The parties shall notify the court when Castro-Vasquez has been released and what further steps are needed to close this case.

**SO ORDERED**.

SIGNED on this _____27ᵗʰ_____ day of January 2026.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE